IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS-HOT SPRINGS

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

NOV 18 2016

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

| | |
|---|---|
| BMO HARRIS BANK N.A., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 16-6118 |
| ALTON BEAN TRUCKING, INC. and GARY BEAN, | ) ) ) |
| Defendants. | ) ) |

## VERIFIED COMPLAINT FOR REPLEVIN, SPECIFIC PERFORMANCE, INJUNCTIVE RELIEF, AND BREACH OF CONTRACT

Plaintiff, BMO Harris Bank N.A., by and through its attorneys, complains of Defendants, Alton Bean Trucking, Inc. and Gary Bean, as follows:

### THE PARTIES

1. Plaintiff, BMO Harris Bank N.A. ("BHB"), is a national banking association with its main office located in Chicago, Illinois, as set forth in its articles of association.

2. Defendant, Alton Bean Trucking, Inc. ("ABT"), is a corporation organized under the laws of Arkansas with its principal place of business located at 203 South Mountain Street, Amity, Arkansas.

3. Defendant, Gary Bean ("Bean," and collectively with ABT, the "Defendants"), is an individual residing at 231 South Mountain Street, Amity, Arkansas.

### JURISDICTION AND VENUE

4. The parties are of diverse citizenship. All Defendants are residents or have a principal place of business in Amity, Arkansas, and Plaintiff's main office is in Chicago, Illinois.

5. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332(a).

7.      For venue purposes, Defendants reside or conduct business in that geographical area which is located within the federal judicial district known as the Western District of Arkansas, Hot Springs Division.

8.      The claims forming the basis of this complaint, or a substantial portion thereof, arose in that geographical area which is contained within the federal judicial district known as the Western District of Arkansas, Hot springs Division. The collateral sought to be recovered is located within said District.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND
### The Agreements

10.      On or about December 30, 2011, non-party GECC, as lender, and ABT, as borrower, entered into Loan and Security Agreement No. 8491637002 (the "First Loan Agreement"), pursuant to which GECC financed ABT's purchase of certain tractors described more fully therein (the "First Loan Collateral"), and ABT agreed to pay GECC $693,736.60, including interest, pursuant to the terms set forth therein. A true and correct copy of the First Loan Agreement is attached hereto as "Exhibit A."

11.      On or about December 30, 2011, General Electric Capital Corporation ("GECC"), as lender, and ABT, as borrower, entered into Loan and Security Agreement No. 8491637003 (the "Second Loan Agreement"), pursuant to which GECC financed ABT's purchase of certain tractors described more fully therein (the "Second Loan Collateral"), and ABT agreed to pay GECC $552,522.60, including interest, pursuant to the terms set forth therein. A true and correct copy of the Second Loan Agreement is attached hereto as "Exhibit B."

12.      On or about January 17, 2012, GECC, as lender, and ABT, as borrower, entered

into Loan and Security Agreement No. 8715197001 (the "Third Loan Agreement"), pursuant to which GECC financed ABT's purchase of certain tractors described more fully therein (the "Third Loan Collateral"), and ABT agreed to pay GECC $417,343.80, including interest, pursuant to the terms set forth therein. A true and correct copy of the Third Loan Agreement is attached hereto as "Exhibit C."

13. On or about December 20, 2012, non-party GE Capital Commercial, Inc. ("GE Commercial, and together with GECC, "GE Capital"), as lender, and ABT, as borrower, entered into Loan and Security Agreement No. 8758946001 (the "Fourth Loan Agreement"), pursuant to which GE Commercial financed ABT's purchase of certain tractors described more fully therein (the "Fourth Loan Collateral"), and ABT agreed to pay GE Commercial $1,459,523.40, including interest, pursuant to the terms set forth therein. A true and correct copy of the Fourth Loan Agreement is attached hereto as "Exhibit D."

14. On or about September 5, 2013, GECC, as lender, and ABT, as borrower, entered into Loan and Security Agreement No. 7778638001 (the "Fifth Loan Agreement"), pursuant to which GECC financed ABT's purchase of certain trailers described more fully therein (the "Fifth Loan Collateral"), and ABT agreed to pay GECC $361,146.00, including interest, pursuant to the terms set forth therein. A true and correct copy of the Fifth Loan Agreement is attached hereto as "Exhibit E."

15. Hereinafter the First Loan Agreement, Second Loan Agreement, Third Loan Agreement, Fourth Loan Agreement, and Fifth Loan Agreement are referred to collectively as the "Agreements," and the First Loan Collateral, Second Loan Collateral, Third Loan Collateral, Fourth Loan Collateral, and Fifth Loan Collateral are referred to collectively as the "Collateral."

16. Pursuant to the Agreements, ABT granted to GE Capital a first-priority security

interest the Collateral, which includes all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto. In summary, the Collateral consists of the following vehicles:

| YEAR | MANUFACTURER | MODEL | DESCRIPTION | SERIAL NUMBER |
|---|---|---|---|---|
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5320ES448305 |
| 2014 | STOUGHTON | DRY VANS | Trailer' | 1DW1A5322ES448306 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5323ES448301 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5324ES448307 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5324ES448310 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5325ES448302 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5326ES448308 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5327ES448303 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5328ES448309 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5329ES448304 |
| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR1CN091662 |
| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR3CN091663 |
| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR5CN091664 |
| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR7CN091665 |
| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR9CN091666 |
| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR0CN121170 |

| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR6CN121173 |
| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR4CN121172 |
| 2012 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR8CN121174 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR9DN091667 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR0DN091668 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR2DN091669 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR1DN463969 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR1DN463972 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR3DN463973 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR5DN463974 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR7DN463975 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR8DN463967 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR8DN463970 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR9DN463976 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJRXDN463968 |
| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJRXDN463971 |

17. GE Capital properly perfected its security interest in the Collateral by possessing the Certificates of Title and GE Capital is identified as the First Lienholder thereon. True and correct copies of the Certificates of Title for the Collateral are attached hereto as "Exhibit F."

18. To induce GE Capital to enter into the Agreements, Bean, as guarantor,

unconditionally guaranteed the past, present, and future performance of ABT under the Agreements (the "Guaranties"). True and correct copies of the Guaranties executed by Bean in favor of GE Capital, dated December 30, 2011, December 20, 2012, and September 5, 2013, are attached hereto as "Exhibit G."

19. Effective December 1, 2015, GE Capital, either directly or indirectly, transferred and assigned to BHB all of their rights, titles and interests in and to their accounts with ABT, including without limitation, the Agreements, the Guaranties, and GE Capital's security interest in the Collateral. As such BHB is GE Capital's successor-in-interest with respect to all rights, claims, and interests related to ABT and Bean with respect to this action. True and correct copies of the Assignments and the Transfer Acknowledgements evidencing the assignment from GE Capital to BHB are attached hereto as "Exhibit H."

20. Under the terms and conditions of the Agreements and the Guaranties, failure to make a payment when due is considered an event of default.

## Default Under the Agreements

21. ABT is in default under the Agreements for its failure to pay the amounts due thereunder. Similarly, Bean is in default under the Guaranties for his failure to pay the amounts due under the Agreements and the Guaranties.

22. More specifically, the Defendants defaulted under the Agreements by failing to make the payment due on or about July 10, 2016, under the First Loan Agreement, August 1, 2016, under the Second Loan Agreement, August 10, 2016, under the Third Loan Agreement, July 15, 2016, under the Fourth Loan Agreement, and September 10, 2016, under the Fifth Loan Agreement, and have failed to make each subsequent payment due under the Agreements.

23. As a result of ABT's defaults under the Agreements, BHB has elected to

accelerate the balance due under the Agreements and declare the entire indebtedness owed pursuant to the Agreements immediately due and payable. As of the date of default, the principal amount due and owing upon acceleration is $756,625.25.

24. Under the Agreements, ABT is obligated to pay interest on all unpaid amounts at the rate of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law. The Agreements are governed by Texas law. *See* Exhibits A – E, § 7.6.

25. In addition, under the Agreements, ABT is obligated to pay late charges and other fees due under the Agreements.

26. In addition, under the Agreements, upon default, ABT is obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Collateral.

27. In addition, under the Agreements, ABT is obligated to pay the attorneys' fees and costs incurred by BHB in the enforcement of its rights thereunder, including this lawsuit.

28. Under the Guaranties, Bean is obligated to pay all amounts due and owing by ABT to BHB under the Agreements.

29. Calculated as of October 3, 2016, the amount due and owing under the Agreements, not including attorneys' fees and costs of collection, was an amount not less than $790,777.11. In addition, default interest, fees, and expenses continue to accrue as set forth in the Agreements.

30. Pursuant to the Agreements, upon ABT's default thereunder, ABT is obligated to immediately turn over to BHB possession of the Collateral.

31. BHB notified Defendants of their defaults under the Agreements and the Guaranties and made written demand that ABT surrender possession of the Collateral to BHB and that Defendants pay the amounts due under the Agreements and Guaranties. True and correct

copies of the default and demand letters to Defendants dated October 4, 2016, are attached hereto as "Exhibit I."

32. Despite express demand, Defendants have failed or refused to pay the amounts due and owing under the Agreements and the Guaranties to BHB.

33. Despite express demand, ABT has failed or refused to return possession of the Collateral to BHB.

34. Pursuant to the Agreements, upon default, BHB has the right to "enter any premises where the [Collateral] may be without judicial process and take possession thereof." *See* Exhibits A –E, ¶ 5.2(iv).

35. BHB has recovered some, but not all, of the Collateral. Specifically, BHB has recovered twenty-one (21) units of Collateral.

36. ABT continues to possess the following eleven (11) units of Collateral (the "Retained Collateral"):

| YEAR | MANUFACTURER | MODEL | DESCRIPTION | SERIAL NUMBER |
|------|--------------|-------|-------------|---------------|
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5320ES448305 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5322ES448306 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5323ES448301 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5324ES448307 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5324ES448310 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5325ES448302 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5326ES448308 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5327ES448303 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5328ES448309 |
| 2014 | STOUGHTON | DRY VANS | Trailer | 1DW1A5329ES448304 |

| 2013 | INTERNATIONAL | PROSTAR | Tractor | 3HSDJSJR9DN463976 |

37. BHB and its predecessors-in-interest have performed any and all conditions and obligations required of them under the Agreements and the Guaranties.

## COUNT I
### (Injunctive Relief)

1-37. BHB incorporates and realleges paragraphs 1 through 37 as paragraphs 1 through 37 of this Count I.

38. ABT continues to possess and utilize, or is capable of utilizing, all or some of the Retained Collateral for commercial purposes.

39. On any given day the Retained Collateral is located, or is capable of being located, in diverse places throughout Arkansas and surrounding states.

40. The Retained Collateral depreciates and deteriorates as a result of its continued use by ABT, with no commensurate value being conferred to BHB in the form of payments due and owing from ABT.

41. ABT has or should have in place capabilities to identify, locate, and surrender the Collateral, which capabilities may now be breaking down.

42. BHB will suffer irreparable injury for which no adequate remedy at law exists unless ABT and other persons and firms having knowledge of this injunction are (a) enjoined from continuing to use the Retained Collateral; (b) ordered to advise BHB of the location of the Retained Collateral; and (c) ordered to surrender the Retained Collateral to BHB.

WHEREFORE, BHB prays that:

a. ABT and other persons and firms having knowledge of the injunction, including without limitation the officers and directors of ABT having knowledge of the injunction, be

temporarily, preliminarily, and permanently enjoined from using the Retained Collateral as of the date of entry of the injunction order;

b. ABT be ordered to disclose to BHB the precise location of the Retained Collateral in order for BHB to reclaim it;

c. ABT be ordered to recover the Retained Collateral in the hands of third parties for delivery to BHB;

d. ABT be temporarily, preliminarily, and permanently enjoined from restricting access of BHB to the Retained Collateral; and

e. BHB be granted such other and further relief as shall be just and equitable.

## COUNT II
### (Specific Performance)

1-42. BHB incorporates and realleges paragraphs 1 through 42 as paragraphs 1 through 42 of this Count II.

43. In the event of default by ABT under the Agreement, ABT is obligated to return the Retained Collateral at its expense and to any location that BHB directs.

44. In the event of default by ABT under the Agreement, BHB is entitled to take possession of the Retained Collateral or direct ABT to remove it to a place deemed convenient by BHB.

45. In the event of default by ABT under the Agreement, BHB is entitled to repossess and remove the Retained Collateral, wherever located.

46. BHB has performed its obligations under the Agreement, and is ready, willing, and able to perform under the Agreement.

47. Despite demand by BHB, ABT has failed to cure its defaults under the Agreements and has failed to return the Retained Collateral.

WHEREFORE, BHB prays that Judgment be entered in BHB's favor and against ABT directing ABT to specifically perform its obligations under the Agreements, and to return and allow the removal of the Retained Collateral, and that BHB be granted such other and further relief as shall be just and equitable.

## COUNT III
### (Replevin)

1-47. BHB incorporates and realleges paragraphs 1 through 47 as paragraphs 1 through 47 of this Count III.

48. This claim is brought pursuant to Ark. Code Ann. § 18-60-801, *et seq.*

49. Pursuant to the Agreements, BHB is lawfully entitled to possession of the Retained Collateral.

50. The Retained Collateral is wrongfully detained by ABT.

51. The Retained Collateral has not been taken for any tax or fine against BHB, or under any order or judgment of a court against BHB, or seized under any execution or attachment against BHB's property.

52. Based upon the best knowledge, information, and belief of BHB, and in the absence of an inspection and assuming that the Retained Collateral is in immediately salable condition, the fair market value of the Retained Collateral, for purposes of setting bond only, is approximately $160,000.

53. Based upon the best knowledge, information, and belief of BHB, the Retained Collateral is based at 203 South Mountain Street, Amity, Arkansas, but may not be present at that location at any given time.

54. BHB claims the value of the Retained Collateral not delivered to the officer by virtue of the enforcement of an order of replevin.

WHEREFORE, BHB prays that an order of replevin be entered on its behalf granting BHB possession of the Retained Collateral, and that BHB be granted such other and further relief as shall be just and equitable.

## COUNT IV
### (Breach of Contract against ABT)

1-54. BHB incorporates and realleges paragraphs 1 through 54 as paragraphs 1 through 54 of this Count IV.

55. The Agreements are valid and fully enforceable contracts between ABT and BHB.

56. BHB has performed all terms and conditions of BHB to be performed by BHB pursuant to the Agreements.

57. ABT has not performed all the terms and conditions of ABT to be performed by it pursuant to the Agreements, and is in breach thereof.

58. BHB has suffered damages due to ABT's breach.

59. BHB is entitled to contractual money damages from ABT.

WHEREFORE, BHB prays that this Court enter a judgment in its favor and against ABT in the amount due under the Agreements, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

## COUNT V
### (Breach of Guaranty against Bean)

1-59. BHB incorporates and realleges paragraphs 1 through 59 as paragraphs 1 through 59 of this Count V.

60. The Guaranties are valid and fully enforceable contracts between Bean and BHB.

61. BHB has performed all terms and conditions of BHB to be performed by BHB

pursuant to the Guaranties.

62. Bean has not performed all the terms and conditions of Bean to be performed by him pursuant to the Agreements and the Guaranties, and is in breach thereof.

63. BHB has suffered damages due to Bean's breach.

64. BHB is entitled to contractual money damages from Bean.

WHEREFORE, BHB prays that this Court enter a judgment in its favor and against Bean in the amount due under the Agreements and the Guaranties, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

Dated: November 17, 2016

Respectfully submitted,

By: /s/ Lance R. Miller

Lance R. Miller (85-109)
MITCHELL, WILLIAMS, SELIG, GATES &
WOODYARD, P.L.L.C.
425 W. Capitol Avenue, Suite 1800
Little Rock, AR 72201
Telephone: 501.688.8855
Facsimile: 501.918.7855

*Attorneys for BMO Harris Bank N.A.*

## VERIFICATION

STATE OF IOWA   )
                     ) SS
COUNTY OF LINN   )

I, Micki Koepke, first being duly sworn, on oath state that:

1. I am employed by BMO Harris Bank N.A. ("BHB"), as a Litigation Specialist, and maintain an office at the office of GE Capital at 1010 Thomas Edison Blvd SW, Cedar Rapids, IA 52404. Immediately before my employment with BHB, I was employed as a Litigation Specialist for GE Capital (as that term is defined in this Verified Complaint).

2. Pursuant to certain transfer and assignment agreements by and between GE Capital and BHB, BHB is the successor-in-interest to GE Capital and is the owner of the accounts of Alton Bean Trucking, Inc. ("ABT"). I am authorized to make this Verification on behalf of BHB.

3. I am charged with administering BHB's account with ABT, and I have charge of the original documents and credit files relating to the accounts of ABT with BHB. Such documentation is maintained by BHB in the ordinary course of its business.

4. I have read the foregoing Verified Complaint and based upon personal knowledge and the business records of GE Capital and BHB verify that the facts stated in it are true.

                                                                             _Micki Koepke_
                                                                              Micki Koepke

Sworn to and subscribed before me this
___ day of November, 2016.

_____
Notary Public

DEBB WHITE
Commission Number 795684
My Commission Expires
April 19, 2019