IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BMO HARRIS BANK N.A.                                                                                    PLAINTIFF

v.                                         Case No. 6:16-cv-6118

ALTON BEAN TRUCKING, INC.
and GARY BEAN                                                                                          DEFENDANTS

## ORDER

Before the Court is Plaintiff BMO Harris Bank N.A.'s Motion to Hold Defendants in Contempt. (ECF No. 24). On April 3, 2019, the Court held a hearing on the matter. The Court finds that no response is necessary and that the matter is ripe for consideration.

## I. BACKGROUND

On November 23, 2016, Plaintiff filed this action, alleging that Defendants were in default under certain loan agreements and guarantees, and seeking replevin, specific performance, injunctive relief, and breach of contract damages. On April 4, 2017, the Clerk of Court entered default against Defendants Alton Bean Trucking, Inc. and Gary Bean. On April 11, 2017, the Court entered default judgment against Defendants, ordering *inter alia* that they must deliver all retained collateral to Plaintiffs and, if not, the U.S. Marshal or appropriate sheriff should assist Plaintiff in gaining possession of the retained collateral. On March 3, 2019, Plaintiff filed a motion to reopen this case, stating that Defendants have not complied with the Court's judgment dated April 11, 2017, despite being served with the same, and that certain of the retained collateral remains in Defendants' possession. On March 4, 2019, the Court granted Plaintiff's motion to reopen.

On March 5, 2019, Plaintiff filed a motion to hold Defendants in civil contempt. Plaintiff requests that the Court impose coercive and compensatory penalties on Defendants in the amount of $165 per day, beginning on August 15, 2018, and continuing unless and until Defendants deliver the remainder of the retained collateral to Plaintiff. Plaintiff also requests that the Court award its attorneys' fees and costs incurred in bringing the motion. On April 3, 2019, the Court held a hearing on the instant motion. Plaintiff and Defendants each appeared, represented by counsel.

## II. DISCUSSION

Plaintiff asks the Court to hold Defendants in civil contempt for failure to comply with the Court's April 11, 2017 judgment. To that end, Plaintiff requests that the Court impose coercive and compensatory penalties on Defendants in the amount of $165 per day, beginning on August 15, 2018, and continuing unless and until Defendants deliver the remainder of the retained collateral to Plaintiff, along with an award of attorneys' fees incurred by bringing the motion.

"[I]t is firmly established that the power to punish for contempt is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal punctuation and citation omitted). Congress has provided federal courts with contempt powers as follows:

> A court of the United States shall have such power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) Misbehavior of any of its officers in their official transactions;
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. Similarly, Federal Rule of Civil Procedure 70 provides means for "enforcing a judgment for a specific act." Fed. R. Civ. P. 70. To this end, a court may, in its discretion, "hold the disobedient party in contempt" after providing notice and an opportunity to be heard. Fed. R. Civ. P. 70(e); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). An

2

overarching goal of a court's contempt power is "to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000).

Two forms of contempt are recognized: civil and criminal. *Bagwell*, 512 U.S. at 827. "Most contempt sanctions . . . to some extent punish a prior offense as well as coerce an offender's future obedience." *Id.* at 828. "[W]hether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved." *Id.* at 827. "Thus, a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." *Id.* In contrast, "criminal contempt . . . is punitive, to vindicate the authority of the court." *Id.* at 828 (internal quotation marks omitted).

Plaintiff asks the Court to hold Defendants in civil contempt. Accordingly, the remainder of the Court's analysis will focus on whether a finding of civil contempt is appropriate under the circumstances of this case. If the Court answers that question in the affirmative, it will then determine the nature and extent of the penalty to be imposed.

**A. Whether Civil Contempt is Proper**

The Court must first determine whether Defendants should be held in civil contempt.

The party seeking civil contempt bears the burden of proving by clear and convincing evidence that the alleged contemnor violated a court order. *Chi. Truck Drivers*, 207 F.3d at 504-05. "A contempt order must be based on a party's failure to comply with a 'clear and specific' underlying order." *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006); *see also Imageware, Inc. v. U.S. W. Commc'ns*, 219 F.3d 793, 797 (8th Cir. 2000) ("No one should be held in contempt for violating an ambiguous order."). However, the movant need not prove that the alleged contemnor willfully violated a court order. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1979) ("The absence of willfulness does not relieve from civil contempt. . . .

Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.").

At the April 3, 2019 hearing,[1] Plaintiff and Defendants stipulated that Defendants failed to comply with a valid court order directing them to act, despite their knowledge of the order. Accordingly, the Court finds that Plaintiff satisfied its initial burden for civil contempt.

If the movant for civil contempt meets its initial burden, the burden then shifts to the nonmoving party to show that it should not be held in civil contempt based on an inability to comply. *Chi. Truck Drivers,* 207 F.3d at 505. To show that compliance is presently impossible, the contemptor must demonstrate: "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made in good faith all reasonable efforts to comply." *Id.* at 506.

At the April 3, 2019 hearing, Defendants did not argue that they should not be held in civil contempt based on an inability to comply. Rather, they stipulated that Defendants failed to comply with a valid court order, despite knowledge of the order. Accordingly, the Court finds that Defendants should be held in civil contempt for their failure to comply with the Court's April 11,

---

[1] Direct contempts occurring in a court's presence may generally be immediately adjudged and sanctioned summarily. *Bagwell*, 512 U.S. at 827 n.2. In contrast, "greater procedural protections are granted [to] those accused of indirect contempts, that is, contempts committed outside the presence of the court." *Jake's, Ltd., Inc. v. City of Coates*, 356 F.3d 896, 902 (8th Cir. 2004).

> For a discrete category of indirect contempts . . . civil procedural protections may be insufficient. Contempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding. . . . Under these circumstances, criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power.

*Bagwell*, 512 U.S. at 833-34. However, not all indirect contempts require additional procedural protections. *Jake's, Ltd., Inc.*, 356 F.3d at 902. "[I]ndirect contempts involving discrete, readily ascertainable acts, such as turning over a key or payment of a judgment, properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing." *Bagwell*, 512 U.S. at 833. This case involves Defendants' failure to comply with a court order directing them to turn over certain tractor trailers to Plaintiff. Thus, the Court finds that this case features the category of indirect contempt involving readily ascertainable acts, which may be properly adjudicated after a civil hearing and without the need for additional procedural protections.

2017 judgment. The Court must now determine the nature and extent of the penalty that should be imposed.

**B. Nature and Extent of Penalty**

Now that the Court has found Defendants to be in civil contempt, it must determine the nature and extent of the penalty that shall be imposed.

"Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chi. Truck Drivers*, 207 F.3d at 505. "The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed." *Mahers v. Hedgepeth*, 32 F.3d 1273, 1275 (8th Cir. 1994). Thus, a court imposing civil contempt "must exercise '[t]he least possible power adequate to the end proposed.'" *Shillitani v. United States*, 384 U.S. 364, 371 (1966) (alteration in original).

"Where compensation is intended, a fine is imposed, payable to [the] complainant." *Chi. Truck Drivers*, 207 F.3d at 505. "[A] compensatory sanction is not imposed to vindicate the court's authority or to punish the contemnor, but rather serves to make reparation to the injured party, restoring that party to the position it would have held had the court's order been obeyed." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989). Compensatory sanctions may also include attorneys' fees and other costs incurred in prosecuting the contempt motion. *Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 630, 630-31 (8th Cir. 1984) (per curium).

A fine may accomplish the purpose of coercion. *Chi. Truck Drivers*, 207 F.3d at 505. A court imposing a civil contempt coercive fine must give the offender an opportunity to reduce or avoid the fine through compliance. *Bagwell*, 512 U.S. at 829 (discussing the difference between civil and criminal contempt fines).

Plaintiff asks the Court to impose both compensatory and coercive sanctions, in the amount of $165.00 per day, beginning on August 15, 2018, and continuing unless and until Defendants deliver the retained collateral to Plaintiff. Plaintiff also asks the Court for attorneys' fees incurred in bringing the instant motion. The Court will first address Plaintiff's request for compensatory sanctions. Then the Court will address Plaintiff's request for coercive sanctions.

### 1. Compensatory Fine

A movant for civil contempt requesting compensatory sanctions must offer evidence of the actual harm it suffered as a result of the other party's contemptuous behavior. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). In support of its request for compensatory sanctions, Plaintiff offers the affidavit of Micki Koepke, an employee of Plaintiff. Ms. Koepke has determined the monthly fair market rental value of the retained collateral by taking the market sample rate for trailers of the same type as the retained collateral, and dividing that number by thirty to yield the daily fair market rental value. Plaintiffs ask the Court to impose the daily fair market rental value, $165.00, as a daily compensatory penalty.

The Court finds that the above-described evidence fails to demonstrate the actual harm Plaintiff has suffered as a result of Defendants' contemptuous behavior. Plaintiff has indicated to the Court that it intends to sell the retained collateral to satisfy part or all of the debt owed by Defendants to Plaintiff. The Court does not believe that the average daily fair market rental value of trailers similar to the retained collateral demonstrates the actual harm Plaintiff has suffered from Defendants' failure to obey the Court's April 11, 2017 judgment. Thus, the Court finds that compensatory penalties should not be imposed to the extent that it relates to the fair market rental value of the retained collateral.

However, the Court does find that Plaintiff has suffered actual harm resulting from Defendants' behavior in that it was forced to bring and litigate the instant motion. But for Defendants' failure to comply with the Court's April 11, 2017 judgment, Plaintiff would not have had to pay counsel to bring this motion, as Plaintiff would already have possession of the retained collateral. Attorneys' fees and other costs incurred in prosecuting the contempt motion may be awarded as a compensatory sanction. *Kehm*, 724 F.2d at 630-31. For the aforementioned reasons, the Court finds that an award of fees and costs is appropriate in this instance. Plaintiff may submit a motion for reasonable fees and costs incurred in bringing the instant motion, along with documenting evidence. Defendant shall then receive an opportunity to object to the amount of fees and costs sought.

**2. Coercive Fine**

As discussed above, a court may impose a coercive fine after holding a party in civil contempt, but the court must give the offender an opportunity to reduce or avoid the fine through compliance. *Bagwell*, 512 U.S. at 829. Plaintiff asks the Court to impose a coercive fine, presumably in the amount of $165.00 per day, beginning on August 15, 2018, and continuing unless and until Defendants deliver the retained collateral to Plaintiff.

The Court finds that a coercive fine of $150.00 per day is the "least possible power adequate to the end proposed," namely, requiring Defendants to relinquish to Plaintiff the retained collateral. *Shillitani*, 384 U.S. at 371. In reaching this determination, the Court has analyzed the magnitude of the fine, whether the fine is "determinate and unconditional" and therefore punitive in nature, or if it is capable of being avoided or purged by coming into compliance with the Court's decree, which is the hallmark of a coercive civil contempt remedy. The Court also takes into consideration "the character and magnitude of the harm threatened by continued contumacy, the

7

probable effectiveness of any suggested sanction in bringing about [compliance], and the contemnor's ability to pay." *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 913 (D. Minn. 2007). The Court finds that these factors weigh in favor of imposing a coercive fine of $150.00 per day, continuing unless and until Defendants comply with the Court's directive to relinquish the retained collateral to Plaintiff. The Court further finds that this coercive fine is a permissible civil contempt penalty based on this case's circumstances.

The Court wishes to stress that Defendants may avoid the coercive fine altogether by complying with the following instructions. As discussed during the April 3, 2019 hearing, Defendants will have until April 15, 2019 to gather all nine trailers comprising the retained collateral—in road-ready condition—at Defendants' place of business in Amity, Arkansas. At that time, Defendants shall allow Plaintiff to take possession of the nine trailers and the parties may attempt to subsequently negotiate a private agreement for Defendants to buy back the trailers. Should those negotiations fail, Plaintiff may sell the trailers to satisfy part or all of Defendants' debt.

If Defendants present all nine trailers as described on or before April 15, 2019, the Court's coercive fine shall not go into effect and Defendants will have no obligation to pay a coercive fine. If, however, Defendants fail to comply with the above-described instructions, the $150.00 per day coercive fine shall begin to accrue on April 16, 2019, continuing unless and until Defendants relinquish all nine trailers to Plaintiff in the manner described above.[2]

---

[2] Should it become necessary for Defendants to pay a coercive fine, it should be delivered to the Clerk of Court's office in Fort Smith, Arkansas.

## III. CONCLUSION

For the aforementioned reasons, the Court finds that Plaintiff's motion (ECF No. 24) should be and hereby is **GRANTED IN PART AND DENIED IN PART**. The Court finds Defendants to be in civil contempt for violating the Court's April 11, 2017 judgment.

The Court hereby imposes against Defendants a coercive fine of $150.00 per day, but this fine shall not immediately go into effect. If Defendants gather all nine trailers comprising the retained collateral—in road-ready condition—at Defendants' place of business in Amity, Arkansas, on or before April 15, 2019, the imposed coercive fine shall be lifted and Defendants shall have no obligation to pay thereunder. If, however, Defendants fail to gather all of the retained collateral by April 15, 2019, the daily $150.00 coercive fine shall go into effect on April 16, 2019, continuing unless and until Defendants relinquish all nine trailers to Plaintiff in the manner described above.

The Court also finds that a compensatory award to Plaintiff in the amount of reasonable attorneys' fees and costs is appropriate to compensate Plaintiff for actual harm suffered as a result of Defendants' behavior. To that end, Plaintiff shall file a motion for attorneys' fees and costs incurred in bringing the instant motion within fourteen days of the date of this order. Defendants may respond or object to Plaintiff's motion within fourteen days of the date of its filing. The Court will, by separate order, determine the amount of attorneys' fees and costs to be awarded to Plaintiff.

**IT IS SO ORDERED**, this 4th day of April, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge