# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HOT SPRINGS DIVISION

BMO HARRIS BANK N.A.                                                                        PLAINTIFF

v.                                     Case No. 6:16-cv-6118

ALTON BEAN TRUCKING, INC.
and GARY BEAN                                                                             DEFENDANTS

## ORDER

Before the Court is Plaintiff BMO Harris Bank N.A.'s Motion for Attorneys' Fees and Costs. (ECF No. 32). Defendants Alton Bean Trucking, Inc. and Gary Bean have not responded and their time to do so has passed. The Court finds the matter ripe for consideration.

## I. BACKGROUND

On November 23, 2016, Plaintiff filed this action, alleging that Defendants were in default under certain loan agreements and guarantees. Plaintiff sought replevin, specific performance, injunctive relief, and breach of contract damages. On April 4, 2017, the Clerk of Court entered default against Defendants. On April 11, 2017, the Court entered default judgment against Defendants, ordering *inter alia* that they deliver all retained collateral to Plaintiff and, if not, the U.S. Marshal or appropriate sheriff should assist Plaintiff in gaining possession of the retained collateral. On March 4, 2019, the Court granted Plaintiff's motion to reopen this case on the basis that Defendants have not complied with the Court's judgment dated April 11, 2017, despite being served with the same, and that certain of the retained collateral remains in Defendants' possession.

On April 5, 2019, the Court granted in part and denied in part Plaintiff's motion to hold Defendants in civil contempt for violating the Court's judgment dated April 11, 2017. In relevant part, the Court found that "a compensatory award to Plaintiff in the amount of reasonable

attorneys' fees and costs is appropriate to compensate Plaintiff for actual harm suffered as a result of Defendants' behavior." (ECF No. 31, p. 9). To that end, the Court directed Plaintiff to file "a motion for reasonable fees and costs incurred in bringing the [motion for civil contempt], along with documenting evidence." (ECF No. 31, p. 7). The Court also indicated that Defendants would receive an opportunity to object to Plaintiff's requested attorneys' fees and costs. On April 18, 2019, Plaintiff filed the instant motion for attorneys' fees and costs.

## II. DISCUSSION

Plaintiff seeks attorneys' fees and costs associated with its attempts to recover the retained collateral from April 12, 2017, through April 4, 2019. Specifically, Plaintiff seeks $8,608.00 in attorneys' fees incurred by its lead counsel, Reed Smith LLP, and $15,488.00 in attorneys' fees incurred by its local counsel, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C. Plaintiff also seeks costs in the amount of $502.62. In all, Plaintiff seeks $24,598.62 in attorneys' fees and costs.

The Court must first address the scope of Plaintiff's requested attorneys' fees and costs. Then, the Court will perform a lodestar analysis to determine whether Plaintiff's requested attorneys' fees and costs are reasonable.

**A. Scope of Requested Attorneys' Fees and Costs**

As a preliminary matter, the Court must address the scope of Plaintiff's requested attorneys' fees and costs. Plaintiff has submitted itemized billing statements spanning back as far as September 20, 2017.[1] (ECF Nos. 32-1, 32-2). Specifically, Plaintiff bases its fee and cost petition on its various attempts to recover the retained collateral from April 12, 2017, through April 4, 2019, including not only Plaintiff's attempts to recover the retained collateral after entry of the

---

[1] Plaintiff filed redacted copies of its itemized billing statements on the docket and provided the Court with unredacted copies for in camera review.

2

Court's April 11, 2017 judgment in this case, but also Plaintiff's involvement in a separate bankruptcy proceeding initiated by Defendants in the United States Bankruptcy Court for the Western District of Arkansas on September 20, 2017, which was subsequently dismissed on August 14, 2018.[2] Thus, many billing entries are unrelated to Plaintiff reopening this case and filing a motion for civil contempt.

The Court cannot award Plaintiff its attorneys' fees and costs incurred in litigating the separate bankruptcy case, nor can the Court award Plaintiff attorneys' fees and costs incurred after entry of the April 11, 2017 judgment for activities unrelated to Plaintiff's motion to reopen this case and its subsequent motion for civil contempt. The Eighth Circuit has authorized civil contempt compensatory sanctions in the amount of the movant's attorneys' fees and other costs incurred in prosecuting a contempt motion. *Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 630, 630-31 (8th Cir. 1984) (per curiam). The Court's April 5, 2019 order finding Defendants to be in civil contempt indicated as such, stating that Plaintiff could be awarded compensatory sanctions in the amount of "reasonable fees and costs incurred in bringing the [motion for civil contempt]." (ECF No. 31, p. 7). Plaintiff has cited no authority, and the Court is unaware of any, allowing a court to award a civil contempt compensatory sanction in the form of attorneys' fees and costs incurred outside of bringing a motion for civil contempt or in litigating a separate, but related, proceeding before another court.[3] In the absence of authority authorizing a compensatory sanction of attorneys' fees and costs for litigation other than bringing a contempt motion, the Court declines

---

[2] *In re Alton Bean Trucking, Inc.*, Case No. 6:17-bk-72352 (Bankr. W.D. Ark.).

[3] Plaintiff's brief supporting the instant motion cites authority that stands only for the proposition that a court awarding a civil contempt compensatory sanction may grant the non-contemptuous party its attorneys' fees and costs incurred in bringing the motion for contempt. (ECF No. 33, p. 4) (citing *HCA Franchise Corp. v. S. Home Care Assistance, Inc.*, No. 6:16-cv-6126, 2007 WL 5906044, at *2 (W.D. Ark. Nov. 30, 2017)).

to award Plaintiff attorneys' fees and costs outside of those associated with Plaintiff reopening this case to file the March 5, 2019 contempt motion.

Because the billing entries are listed chronologically, the Court is left to sort out the billing entries that appear to be related to the contempt motion, *i.e.*, the entries for which the Court can award attorneys' fees. In doing so, the Court started with the billing entries that began roughly on December 3, 2018, when Plaintiff's counsel began discussing strategies to recover the retained collateral from Defendants, ultimately leading to Plaintiff moving to reopen this case and moving for civil contempt. It is apparent from the itemized entry descriptions that most billing entries after December 3, 2018 are related in some way to reopening this case to file a contempt motion. However, certain entries from January 11, 2019, through March 13, 2019, appear to be unrelated to the contempt motion, instead concerning an "answer" being due, communications regarding foreclosure, or unspecified correspondence. (ECF No. 31-2, pp. 15-20). Those certain entries contain no further information other than brief descriptions and, thus, the Court finds that it is without sufficient information to determine whether those certain entries relate to Plaintiff's motion for sanctions. Accordingly, the Court has excluded those certain entries from consideration.

After excluding all billing entries that are not readily identifiable as relating to the contempt motion, Plaintiff is left seeking attorneys' fees of $9,928.50 and costs of $502.62.[4] The Court will now conduct a lodestar analysis to determine whether this amount is reasonable.

---

[4] Based on the Court's calculations, the total amount of attorneys' fees represents $3,478.00 to Plaintiff's lead counsel, which utilized one associate attorney billing roughly 14.8 hours at a rate of $235 per hour (ECF No. 32-1, pp. 4-5), and $6,450.50 to Plaintiff's local counsel, which utilized one associate attorney billing roughly 26.3 hours at $175-180 per hour and one partner billing roughly 5.8 hours at $300 per hour. (ECF No. 32-2, pp. 16-29).

**B. Lodestar Analysis**

The starting point in determining attorneys' fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate.[5] *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). The term "reasonable hourly rate" is usually defined as the ordinary rate for similar work in the community where the case is litigated. *See Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014). The burden of proving attorneys' fees rests with the fee applicant. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.* at 433. The fee applicant must also make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). When calculating the lodestar, a district court need not accept counsel's submission of hours as conclusive but should exclude from that total those hours that were not reasonably expended on the litigation. *Hensley*, 461 U.S. at 433-34.

After determining the lodestar amount, the Court must then "consider whether other factors not considered in arriving at the lodestar amount suggest upward or downward adjustment to arrive at the appropriate fee award." *Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, No. 2:00-cv-2031-RTD, 2006 WL 1445719, at *1 (W.D. Ark. May 22, 2006) (citing *Hensley*, 461 U.S. at 434). In doing so, the Court is instructed to consider the factors set forth in *Johnson v. Ga.*

---

[5] Courts making a lodestar determination are required to consider twelve factors: (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment, due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

*Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1964).[6] *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). Although the Court "need not exhaustively address every factor . . . the district court should consider what factors, 'in the context of the present case, deserve explicit consideration.'" *Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 882 (N.D. Iowa 2004) (quoting *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997-98 (8th Cir. 1999)).

Plaintiff asserts that its attorneys' hourly rates are comparable to hourly rates this Court has found to be reasonable for services performed in Texarkana, Arkansas. (ECF No. 33, p. 4). However, the lodestar analysis requires reasonable hourly rates for similar services performed in the community where the case is litigated, which is Hot Springs, Arkansas. *Miller*, 764 F.3d at 831. The Court need not spend much time determining the reasonable hourly rate in Hot Springs, Arkansas for services similar to those performed in this case, as it has already done so in a prior order entered in this case. (*See* ECF No. 18, pp. 5-7). After reviewing Plaintiff's billing statements, the Court concludes that the hourly rates utilized by Plaintiff's lead and local counsel all fall within the range of what the Court has previously determined to be reasonable. Thus, the Court finds that Plaintiff's counsel's hourly rates are reasonable.

The Court likewise finds that Plaintiff's remaining billed hours are reasonable. Defendants have offered no argument otherwise, and the Court finds that Plaintiff's number of hours worked on the matter are reasonable in light of the present circumstances of the case and the experience of

---

[6] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. Many of these factors are subsumed within the initial lodestar calculation. *Hensley*, 461 U.S. at 434.

the attorneys working on the matter. Therefore, the Court will award Plaintiff reasonable attorneys' fees of $9,928.50 and costs of $502.62, for a total of $10,431.12.

### III. CONCLUSION

For the above-stated reasons, the Court finds that Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 32) should be and hereby is **GRANTED IN PART AND DENIED IN PART**. Accordingly, Plaintiff is awarded reasonable attorneys' fees and costs in the amount of $10,431.12.

**IT IS SO ORDERED**, this 6th day of May, 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge