IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BMO HARRIS BANK N.A.                                                                   PLAINTIFF

v.                          Case No. 6:16-cv-6118

ALTON BEAN TRUCKING, INC.
and GARY BEAN                                                       DEFENDANTS

**ORDER**

Before the Court is Plaintiff BMO Harris Bank N.A.'s Motion to Hold Defendants in Contempt. (ECF No. 38). On June 25, 2019, the Court held a hearing on the matter. The Court finds that no response is necessary and that the matter is ripe for consideration. For the following reasons, the motion will be granted in part and denied in part.

**I. BACKGROUND**

On November 23, 2016, Plaintiff filed this action, alleging that Defendants Alton Bean Trucking, Inc. ("ABT") and Gary Bean[1] were in default under certain loan agreements and guarantees, and seeking replevin, specific performance, injunctive relief, and breach of contract damages. On April 4, 2017, the Clerk of Court entered default against Defendants. On April 11, 2017, the Court entered default judgment against Defendants, ordering *inter alia* that they must deliver all retained collateral to Plaintiffs and, if not, the U.S. Marshal or appropriate sheriff should assist Plaintiff in gaining possession of the retained collateral. On March 3, 2019, Plaintiff filed a motion to reopen this case, stating that Defendants have not complied with the Court's judgment

---

[1] At the June 25, 2019 hearing, the parties noted for the first time that Defendant Gary Bean passed away prior to the initiation of this case. His son, Gary Bean Jr., appeared before the Court in his sole capacity as ABT's president and corporate representative. Plaintiff conceded at the hearing that ABT is the only defendant in this case for present purposes and, thus, the remainder of this order relates solely to ABT.

dated April 11, 2017, despite being served with the same, and that certain of the retained collateral remains in Defendants' possession. On March 4, 2019, the Court granted Plaintiff's motion to reopen.

On April 5, 2019, the Court, on Plaintiff's motion, entered an order finding Defendants in civil contempt for failure to comply with the Court's April 11, 2017 judgment. That contempt order also directed Defendants to gather all nine trailers then comprising the retained collateral, in road ready condition, at ABTs' place of business by April 15, 2019. On May 1, 2019, Plaintiff filed a motion requesting a show cause order, stating that Defendants had not produced the nine trailers as ordered by the Court. On May 6, 2019, the Court entered a show cause order, directing Defendants to show cause why they have not complied with the Court's orders. To date, Defendants have not responded to or acknowledged the Court's show cause order.

On May 24, 2019, Plaintiff filed a second motion to hold ABT in civil contempt. Plaintiff requests that the Court impose coercive sanctions on ABT in an amount that the Court deems appropriate. Plaintiff also requests that the Court grant a compensatory award of attorneys' fees and costs incurred by Plaintiff since the last civil contempt hearing on April 3, 2019; the depreciated value of the trailers; the full amount of insurance proceeds related to one of the trailers that was previously wrecked;[2] a compensatory fine; and unspecified interest. On June 25, 2019, the Court held a hearing on the instant motion. Plaintiff and ABT—through its president and corporate representative Gary Bean Jr.—each appeared, represented by counsel.

---

[2] Evidence at the hearing established that one of the nine trailers at issue was involved in a wreck and, thus, cannot be turned over to Plaintiff. An insurance claim has been submitted for that trailer and remains pending, but no evidence was introduced regarding the status of that claim.

## II. DISCUSSION

Plaintiff asks the Court to hold ABT in civil contempt for failure to comply with the Court's April 11, 2017 judgment; the Court's April 4, 2019 contempt order; and the Court's May 6, 2019 show cause order. To that end, Plaintiff requests that the Court impose coercive and compensatory sanctions on ABT.

"[I]t is firmly established that the power to punish for contempt is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal punctuation and citation omitted). Congress has provided federal courts with contempt powers as follows:

> A court of the United States shall have such power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) Misbehavior of any of its officers in their official transactions;
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. Similarly, Federal Rule of Civil Procedure 70 provides means for "enforcing a judgment for a specific act." Fed. R. Civ. P. 70. To this end, a court may, in its discretion, "hold the disobedient party in contempt" after providing notice and an opportunity to be heard. Fed. R. Civ. P. 70(e); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). An overarching goal of a court's contempt power is "to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000).

Two forms of contempt are recognized: civil and criminal. *Bagwell*, 512 U.S. at 827. "Most contempt sanctions . . . to some extent punish a prior offense as well as coerce an offender's future obedience." *Id.* at 828. "[W]hether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved." *Id.* at 827. "Thus, a contempt sanction is considered civil

if it is remedial, and for the benefit of the complainant." *Id.* In contrast, "criminal contempt . . . is punitive, to vindicate the authority of the court." *Id.* at 828 (internal quotation marks omitted).

Plaintiff asks the Court to hold ABT in civil contempt. Accordingly, the remainder of the Court's analysis will focus on whether a finding of civil contempt is appropriate under the circumstances of this case. If the Court answers that question in the affirmative, it will then determine the nature and extent of the sanctions to be imposed.

**A. Whether Civil Contempt is Proper**

The Court must first determine whether ABT should be held in civil contempt.

The party seeking civil contempt bears the burden of proving by clear and convincing evidence that the alleged contemnor violated a court order. *Chi. Truck Drivers*, 207 F.3d at 504-05. "A contempt order must be based on a party's failure to comply with a 'clear and specific' underlying order." *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006); *see also Imageware, Inc. v. U.S. W. Commc'ns*, 219 F.3d 793, 797 (8th Cir. 2000) ("No one should be held in contempt for violating an ambiguous order."). However, the movant need not prove that the alleged contemnor willfully violated a court order. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1979) ("The absence of willfulness does not relieve from civil contempt. . . . Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.").

At the June 25, 2019 hearing,[3] Plaintiff and ABT appeared to agree that ABT failed to comply with a valid court order directing it to act, despite its knowledge of the order. Moreover,

---

[3] Direct contempts occurring in a court's presence may generally be immediately adjudged and sanctioned summarily. *Bagwell*, 512 U.S. at 827 n.2. In contrast, "greater procedural protections are granted [to] those accused of indirect contempts, that is, contempts committed outside the presence of the court." *Jake's, Ltd., Inc. v. City of Coates*, 356 F.3d 896, 902 (8th Cir. 2004).

> For a discrete category of indirect contempts . . . civil procedural protections may be insufficient. Contempts involving out-of-court disobedience to complex injunctions often require elaborate and

the evidence at the hearing demonstrated as much. Accordingly, the Court finds that Plaintiff satisfied its initial burden for civil contempt.

If the movant for civil contempt meets its initial burden, the burden then shifts to the nonmoving party to show that it should not be held in civil contempt based on an inability to comply. *Chi. Truck Drivers,* 207 F.3d at 505. To show that compliance is presently impossible, the contemptor must demonstrate: "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made in good faith all reasonable efforts to comply." *Id.* at 506.

At the June 25, 2019 hearing, ABT did not argue that it should not be held in civil contempt based on an inability to comply. Accordingly, the Court finds that ABT should be held in civil contempt for its failure to comply with the Court's April 11, 2017 judgment; the Court's April 4, 2019 contempt order; and the Court's May 6, 2019 show cause order. The Court must now determine the nature and extent of the sanctions that should be imposed.

**B. Nature and Extent of Sanctions**

Now that the Court has found ABT to be in civil contempt, it must determine the nature and extent of the sanctions that shall be imposed.

"Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chi. Truck Drivers*,

---

reliable factfinding. . . . Under these circumstances, criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power.

*Bagwell*, 512 U.S. at 833-34. However, not all indirect contempts require additional procedural protections. *Jake's, Ltd., Inc.*, 356 F.3d at 902. "[I]ndirect contempts involving discrete, readily ascertainable acts, such as turning over a key or payment of a judgment, properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing." *Bagwell*, 512 U.S. at 833. This case involves ABT's failure to comply with multiple court orders directing it to turn over certain trailers to Plaintiff. Thus, the Court finds that this case features the category of indirect contempt involving readily ascertainable acts, which may be properly adjudicated after a civil hearing and without the need for additional procedural protections.

207 F.3d at 505. "The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed." *Mahers v. Hedgepeth*, 32 F.3d 1273, 1275 (8th Cir. 1994). Thus, a court imposing civil contempt "must exercise '[t]he least possible power adequate to the end proposed.'" *Shillitani v. United States*, 384 U.S. 364, 371 (1966) (alteration in original).

"Where compensation is intended, a fine is imposed, payable to [the] complainant." *Chi. Truck Drivers*, 207 F.3d at 505. "[A] compensatory sanction is not imposed to vindicate the court's authority or to punish the contemnor, but rather serves to make reparation to the injured party, restoring that party to the position it would have held had the court's order been obeyed." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989). Compensatory sanctions may also include attorneys' fees and other costs incurred. *Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 630, 630-31 (8th Cir. 1984) (per curium).

Either incarceration or a fine may accomplish the purpose of coercion. *Chi. Truck Drivers*, 207 F.3d at 505. A court imposing a civil contempt coercive fine must give the offender an opportunity to reduce or avoid the fine through compliance. *Bagwell*, 512 U.S. at 829 (discussing the difference between civil and criminal contempt fines). In some cases, a "conditional jail term" may be required to coerce compliance. *Hutto v. Finney*, 437 U.S. 678, 690 (1978).

Plaintiff asks the Court to impose both compensatory and coercive sanctions. The Court will first address Plaintiff's request for compensatory sanctions. Then the Court will address Plaintiff's request for coercive sanctions.

### 1. Compensatory Sanctions

A movant for civil contempt requesting compensatory sanctions must offer evidence of the actual harm it suffered as a result of the other party's contemptuous behavior. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). In support of its request for

compensatory sanctions, Plaintiff offers the affidavit of Micki Koepke, Plaintiff's corporate representative. Ms. Koepke's affidavit states that Plaintiff has been damaged by ABT's continued possession of the trailers because they are diminishing in value through ABT's continued use. Ms. Koepke also states that Plaintiff has been damaged by having to incur various additional expenses, fees, and costs because of ABT's continued possession of the trailers. Plaintiff asks the Court to award it the amount of diminished value of the eight remaining trailers, a compensatory fine, the total amount of insurance proceeds related to the wrecked trailer, its fees and costs incurred since the April 3, 2019 contempt hearing, and unspecified interest.

The Court finds that the evidence offered at the June 25, 2019 hearing fails to establish damages related to Plaintiff's request for a compensatory fine and unspecified interest. Thus, the Court finds that compensatory sanctions shall not be imposed to the extent that it relates to those requested compensatory awards.

However, the Court does find that Plaintiff has suffered actual harm resulting from ABT's behavior in that Plaintiff was forced to incur additional fees and costs since the April 3, 2019 hearing. But for ABT's failure to comply with the Court's April 4, 2019 contempt order, Plaintiff would already have possession of the retained collateral and would not have been required to incur additional expenses. For this reason, the Court finds that a compensatory award of fees and costs is appropriate. Plaintiff may submit a motion for reasonable fees and costs incurred since the April 3, 2019 hearing, along with documenting evidence. Once that motion is filed, ABT shall have fourteen days to file a response, if any.

The Court finds further that Plaintiff is entitled to a compensatory award of the diminished value, if any, of the eight remaining trailers. The diminishment of value shall be calculated from September 2018, when the record demonstrates that Plaintiff first made attempts to enforce the

April 11, 2017 judgment, (ECF No. 24-1, pp. 2-3), to the present. As discussed at the June 25, 2019 hearing, once Plaintiff receives the eight remaining trailers from ABT, it shall assess the depreciation, if any, of those trailers and may file an appropriate motion thereafter.

The parties agreed at the hearing that Plaintiff is entitled to the total amount of insurance proceeds related to the wrecked trailer. Thus, the Court finds that Plaintiff shall receive the total amount of insurance proceeds related to the wrecked trailer. If the insurance proceeds related to the wrecked trailer are, for some reason, paid to ABT or any of its officers or employees, ABT shall immediately remit that amount to Plaintiff.

### 2. Coercive Sanctions

As discussed above, a court may impose a coercive sanction after holding a party in civil contempt, but the court must give the offender an opportunity to reduce or avoid the sanction through compliance. *Bagwell*, 512 U.S. at 829. Plaintiff asks the Court to impose coercive sanctions in whatever increased amount the Court deems necessary, arguing that the Court's prior coercive sanction has shown to be insufficient.

The Court previously imposed a coercive fine of $150.00 per day, beginning on April 16, 2019, when ABT failed to provide the retained trailers as ordered by the Court. It has become clear that a daily coercive fine of $150.00 is inadequate to accomplish its intended purpose, namely, requiring ABT to relinquish to Plaintiff the retained collateral. Thus, the Court will increase the daily coercive fine to $2,500.00, which the Court finds is the "least possible power adequate to the end proposed." *Shillitani*, 384 U.S. at 371. In reaching this determination, the Court has analyzed the magnitude of the fine, whether the fine is "determinate and unconditional" and therefore punitive in nature, or if it is capable of being avoided or purged by coming into compliance with the Court's decree, which is the hallmark of a coercive civil contempt remedy.

The Court also takes into consideration "the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about [compliance], and the contemnor's ability to pay." *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 913 (D. Minn. 2007). The Court finds that these factors weigh in favor of imposing a coercive fine of $2,500.00 per day, continuing unless and until ABT complies with the Court's directive to relinquish the retained collateral to Plaintiff. The Court further finds that this coercive fine is a permissible civil contempt sanction based on this case's circumstances.

The Court wishes to stress that ABT may avoid the increased coercive fine altogether by complying with the following instructions. As discussed during the June 25, 2019 hearing, ABT will have until June 28, 2019 to gather all eight remaining trailers—in road-ready condition—at ABT's place of business in Amity, Arkansas. At that time, ABT shall allow Plaintiff to take possession of the trailers. Once Plaintiff is in possession of the trailers, any coercive fine—whether $150.00 per day or $2,500.00 per day—shall cease.[4]

If ABT presents all eight remaining trailers as described on or before June 28, 2019, the Court's increased coercive fine shall not go into effect and ABT will have no obligation to pay that increased amount. If, however, ABT fails to comply with the above-described instructions, the $2,500.00 per day coercive fine shall begin to accrue on June 29, 2019, continuing unless and until ABT relinquish all eight remaining trailers to Plaintiff in the manner described above.[5]

The Court also wishes to strongly caution ABT that, as discussed in the hearing, should any additional hearing be necessary regarding ABT's failure to relinquish the eight remaining

---

[4] The current $150.00 per day coercive fine shall continue to accrue until ABT produces all eight remaining trailers or June 28, 2019, whichever occurs first.

[5] As before, payment of any coercive fine should be delivered to the Clerk of Court's office in Fort Smith, Arkansas. To date, ABT has, by the Court's calculation, accrued coercive fines in a total amount of $10,500.00. As of the date of this order, the record shows that ABT has made two $1,200.00 payments, leaving $8,100.00 unpaid. ABT must pay that amount to the Court regardless of whether any additional coercive fines go into effect.

trailers as ordered, the Court will most likely sentence one of ABT's officers—either Gary Bean Jr. or Tommy Bean, his brother and ABT's vice president—to a conditional jail term. *Hutto*, 437 U.S. at 690. If imposed, the jail term would end as soon as ABT relinquishes the eight remaining trailers to Plaintiff. It is not the Court's desire to take this action, but it will do so if it becomes apparent that daily coercive fines are not having their intended effect and that more drastic steps are required to coerce ABT's compliance with the Court's orders.

### III. CONCLUSION

For the aforementioned reasons, the Court finds that Plaintiff's motion (ECF No. 38) should be and hereby is **GRANTED IN PART AND DENIED IN PART**. The Court finds ABT to be in civil contempt for violating the Court's April 11, 2017 judgment; the Court's April 4, 2019 contempt order; and the Court's May 6, 2019 show cause order

The Court hereby imposes against ABT an increased coercive fine of $2,500.00 per day, but this fine shall not immediately go into effect. If ABT gather all eight remaining trailers comprising the retained collateral—in road-ready condition—at ABT's place of business in Amity, Arkansas, on or before June 28, 2019, the previously imposed coercive fine of $150.00 shall cease and ABT shall have no further obligation to pay thereunder. If, however, ABT fail to gather all of the eight remaining trailers by June 28, 2019, the increased $2,500.00 coercive fine shall go into effect on June 29, 2019, continuing unless and until ABT relinquishes all eight remaining trailers to Plaintiff in the manner described above.

The Court also finds that a compensatory award to Plaintiff of reasonable attorneys' fees and costs is appropriate to compensate Plaintiff for actual harm suffered as a result of ABT's behavior. To that end, within fourteen days of the date of this order, Plaintiff shall file a motion for attorneys' fees and costs incurred since the April 3, 2019 contempt hearing. ABT may respond

or object to Plaintiff's motion within fourteen days of the date of its filing. The Court will, by separate order, determine the attorneys' fees and costs to be awarded to Plaintiff.

The Court also finds that Plaintiff is entitled to a compensatory award of the diminished value, if any, of the eight remaining trailers. Once Plaintiff receives the eight remaining trailers from ABT, it shall assess the depreciation of those trailers and may file an appropriate motion thereafter. If such a motion is filed, the Court will, by separate order, determine the amount of the compensatory award for depreciated value of the trailers, if any, that shall be awarded to Plaintiff.

Plaintiff shall receive the total amount of insurance proceeds related to the wrecked trailer. If the insurance proceeds are paid to ABT or any of its officers or employees, ABT shall immediately remit that amount to Plaintiff.

**IT IS SO ORDERED**, this 27th day of June, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge